U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

SEP 3 0 2010

TONY R. M○○○○ ○RK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

---

CARL BERNOFSKY and
SHIRLEY G. BERNOFSKY

versus

CIVIL ACTION NO. 09-1919
JUDGE TOM STAGG

THE ROAD HOME CORPORATION,
ICF EMERGENCY MANAGEMENT
SERVICES, LLC, LOUISIANA RECOVERY
AUTHORITY, and LOUISIANA DIVISION OF
ADMINISTRATION THROUGH THE
OFFICE OF COMMUNITY DEVELOPMENT

---

## MEMORANDUM RULING

Before the court are two motions to dismiss filed by the defendants the Louisiana Recovery Authority, Louisiana Division of Administration through the Office of Community Development, and ICF Emergency Management Services, LLC (hereinafter collectively referred to as "the defendants"). See Record Documents 19 and 20. Based on the following, the defendants' motions to dismiss are **GRANTED**.

## I. BACKGROUND

A.   **Facts.**

On August 29, 2005, Hurricane Katrina struck New Orleans, Louisiana, causing catastrophic damage to the city and to the residential property of husband and wife, Carl and Shirley Bernofsky ("the Bernofskys"). At the time, the Bernofskys owned the property at 6478 General Diaz Street, New Orleans, Louisiana 70124, in the Lakeview subdivision. The hurricane and resulting flooding severely damaged the Bernofskys' property.

In response to Hurricanes Katrina and Rita, the Federal Government awarded the State of Louisiana an initial $6.4 billion dollars, followed by an additional $4.2 million dollars, in Community Development Block Grants ("CDBG") for disaster recovery and rebuilding efforts. See Record Document 19, Ex. B. In return, Louisiana was required to develop a plan for disbursement of the CDBG funds to be approved by the United States Department of Housing and Urban Development ("HUD"). Louisiana developed "The Road Home Program," which was approved by HUD on May 30, 2006.

In accordance with federal statute, the state created the Louisiana Recovery Authority ("LRA") to oversee the disbursement of federal funds. See La. R.S. 49:220.4-220.5. The state authorized the Office of Community Development

("OCD") within the Division of Administration ("DOA") to administer The Road Home Program. See La. R.S. 40:600.62(2). It is undisputed that the LRA and the OCD are state agencies. See Record Document 1 at 2. Additionally, the state contracted with ICF Emergency Management Services, LLC ("ICF"), a limited liability company domiciled in Delaware, to serve as "Louisiana's Road Home Housing Manager" from June 12, 2006, to June 11, 2009.[1] See Record Document 24, Ex. A. ICF's responsibilities included "accept[ing] and process[ing] applications for financial assistance," "verify[ing] applicants' eligibility" and "determin[ing] amounts of assistance in accordance with State guidelines." Record Document 24, Ex. A.

In an attempt to claim benefits, the Bernofskys filled out a registration application online with Louisiana's "Road Home Registry" on May 7, 2006. See Record Document 1, Ex. A. The Road Home Registry was a project administered through Governor Kathleen Blanco's office, designed to assist Louisiana residents with obtaining funds to rebuild. See id. The Road Home Registry website

---

[1]The court does not consider the contract between ICF and the State of Louisiana in its decision to grant ICF's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The contract was provided as an exhibit to the motion to dismiss filed by ICF and to the opposition brief filed by the Bernofskys. The contract is not part of the pleadings and is not considered in the Rule 12(b)(6) motion. The contract information is provided here by way of background only, as

encouraged residents to "Begin the Housing Registration Process Here," informed readers that "[t]his registration process is the first step for the State to identify your home address and information in determining your eligibility for funding," and thanked them for taking "this important first step." Id. Upon completing the online registration, the Bernofskys received a confirmation page with a registration number. See id. The Road Home Registry, through the confirmation page, thanked them for their "participation in the pre-application registry process" and informed them that someone would be in contact "as soon as the program begins." Id.

Between May of 2006 and August of 2008, the Bernofskys took no action with regard to The Road Home Program. While the Bernofskys were not contacted by The Road Home Program as promised by the confirmation page, they also never inquired as to the status of their registration or how to complete the application process. Relying on newspaper reports, the Bernofskys concluded they were not eligible for Road Home benefits because they were selling their home. See Record Document 1 at 3.

The Bernofskys sold their gutted home at a great loss on February 14, 2007. They received insurance proceeds, but this amount did not cover their total losses.

---

it is undisputed by the parties.

The Bernofskys claim an uncompensated loss of $89,391.88. See Record Document 1 at 9.

Later, the Bernofskys discovered they might be eligible for benefits, again through newspaper reports. They began making inquiries on August 1, 2008. The Bernofskys wrote multiple letters to Road Home, the Road Home Appeals Department, the LRA, the OCD, and Senator Mary Landrieu seeking information regarding their Road Home eligibility. See Record Document 1, Exs. E-K, M.

By this time, The Road Home Program application deadline of July 31, 2007, had already passed. On June 1, 2009, the Bernofskys allegedly received a telephone call from Ms. Judy Johnson-White ("Ms. Johnson-White"), representing Road Home. Ms. Johnson-White informed them that Road Home had "no record of their registration" or "listing of their home in their records." Record Document 1 at 5. The Bernofskys allege they received another call from Ms. Johnson-White on July 28, 2009, in which she told them that they were "not qualified for Road Home benefits because they had not registered." Record Document 1 at 5-6. Finally, on October 20, 2009, the OCD notified the Bernofskys that they were not eligible for Road Home benefits, because they had not timely filed an application for The Road Home Program and no exception for late filing could be given. See Record Document 1, Ex. P.

**B.	Procedural History.**

The Bernofskys filed this suit against defendants, The Road Home Corporation, ICF, the LRA, and the OCD on November 13, 2009. The Bernofskys claim they are entitled to $89,391.88 from the defendants for damage to their property. Specifically the Bernofskys allege the following:

(1) Defendants were negligent in failing to contact the Bernofskys following their online registration and in refusing to allow them to file an application after the deadline;

(2) Defendants violated their duty to serve Louisiana residents by failing to respond to the Bernofskys' requests for information regarding Road Home eligibility;

(3) Defendants' "disparate treatment" of the Bernofskys violated their rights under 42 U.S.C. § 1983 of the Civil Rights Act; and

(4) Defendants' "disparate treatment" of the Bernofskys violated their right to Equal Protection under the Fourteenth Amendment and Article 1, Section 3 of the Louisiana Constitution.

See Record Document 1. Plaintiffs' jurisdictional basis for this suit is 28 U.S.C. § 1331.

Defendants the LRA and the OCD (hereinafter "the agencies") move to dismiss the Bernofskys' claims for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The LRA and the OCD argue that they are immune from suit in federal court as an "arm of the state" under the Eleventh Amendment. The agencies also move to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). See Record Document 19.

Defendant ICF moves to dismiss the Bernofskys' claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for failure to join a party under Rule 19 pursuant to Rule 12(b)(7). See Record Document 20.

## II. LAW AND ANALYSIS

A.  **Motion To Dismiss By LRA And OCD.**

1.  **Eleventh Amendment Immunity.**

The Eleventh Amendment[2] prohibits an individual from suing a state in federal court, "unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 326 (5th Cir. 2002). In addition to protecting states from suits

---

[2]The Eleventh Amendment to the Constitution of the United States provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by

7

brought by citizens of other states, it is well-established that the Eleventh Amendment bars a federal court from "entertain[ing] a suit brought by a citizen against his own State." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98, 104 S. Ct. 900, 906 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 10 S. Ct. 504 (1890)); Edelman v. Jordan, 415 U.S. 615, 663, 94 S. Ct. 1347, 1355 (1974). Eleventh Amendment protection also extends to state law claims brought under pendent jurisdiction. See Pennhurst, 465 U.S. at 120-21, 104 S. Ct. at 919. Finally, "a state's Eleventh Amendment immunity extends to any state agency or entity deemed an alter ego or arm of the state." Perez, 307 F.3d at 326 (internal quotations omitted).

Plaintiffs concede that the LRA and the OCD are "agenc[ies] of the State of Louisiana." Record Document 1 at 2. The parties do not dispute that the agencies qualify as the "state" for purposes of Eleventh Amendment immunity. Thus, both the LRA and the OCD are immune from suit in federal court absent a valid waiver by the state or unequivocal abrogation by Congress.[3] The court finds that the LRA

---

Citizens of another State, or by Citizens or Subjects of any Foreign State."

[3]Although the issue is undisputed, the court has applied the 5th Circuit's six factor test out of an abundance of caution and finds that a suit against the LRA and the OCD is effectively a suit against the State of Louisiana. See Perez, 307 F.3d at 326-27. The United States District Court for the Eastern District of Louisiana, in Robinson v. Road Home Corp., Civil Action No. 09-4782, 2010 WL 148364 (E.D.La. Jan. 12, 2010), held that the LRA and the OCD qualify as the "state" for

and the OCD are immune from suit in federal court and the motion to dismiss must be granted.

## 2. Waiver Of Immunity By The State.

Louisiana has not waived its Eleventh Amendment immunity from federal court jurisdiction. "The test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241, 105 S. Ct. 3142, 3146 (1985). Waiver requires a "clear declaration" by the state. AT&T Commc'ns v. BellSouth Telecomm., Inc., 238 F.3d 636, 644 (5th Cir. 2001) (quoting College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675-76, 119 S. Ct. 2219 (1999)). Courts will find waiver "only where stated by the most express language or by such overwhelming implications for the text as will leave no room for any other reasonable construction." Edelman, 415 U.S. at 673, 94 S. Ct. at 1361 (internal quotations omitted).

The Bernofskys can point to no express waiver by the State of Louisiana of its Eleventh Amendment immunity in federal court.[4] The state has made clear that

---

Eleventh Amendment purposes.
[4]Plaintiffs argue that the State of Louisiana has waived its Eleventh Amendment immunity, citing Article 12, Section 10(A) of the Louisiana Constitution and Louisiana Revised Statute section 49:220.4(A)(1). Section 10(A) of the Louisiana Constitution waives Louisiana's sovereign immunity in tort and

"[n]o suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court." La. R.S. 13:5106(A).

The "mere fact that a State participates in a program through which the Federal Government provides assistance for the operation by the State of a system of public aid is not sufficient to establish consent on the part of the State to be sued in the federal courts." Edelman, 415 U.S. at 673, 94 S. Ct. at 1361; Atascadero, 473 U.S. at 247, 105 S. Ct. at 3149. The federal statute must "clearly and unambiguously" provide that "the state's particular conduct or transaction will subject it to federal court suits brought by individuals." AT&T, 238 F.3d at 644.

The federal statutes at issue here, Pub. L. No. 109-148, 119 Stat. 2680 (Dec. 30, 2005) and Pub. L. No. 109-234, 120 Stat. 418 (June 15, 2006), do not include a provision even referencing federal court jurisdiction, much less expressly conditioning the receipt of federal funds on the state's waiver of Eleventh

---

contract cases. However, the provision does not expressly waive the state's sovereign immunity in *federal court*. As the Supreme Court explained in Atascadero, "[a]lthough a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment . . . Thus in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court*." Atascadero, 473 U.S. at 241, 105 S. Ct. at 3146 (emphasis in original). Likewise, Louisiana Revised Statute section 49:220.4(A)(1) grants the LRA the "power to sue and be sued," but says nothing of waiving the agency's Eleventh Amendment immunity in federal court. The court finds both provisions insufficient to waive Louisiana's Eleventh

Amendment immunity. See Record Documents 19, Ex. B and 30, Ex. G. The court finds the State of Louisiana's receipt of community development funds was not a waiver of Eleventh Amendment immunity.

3. **Abrogation Of Immunity By Congress.**

Congress has not unequivocally abrogated Louisiana's sovereign immunity with regard to the Bernofskys' claims under 42 U.S.C. §1983 and the Fourteenth Amendment. To find that Congress abrogated a state's Eleventh Amendment immunity, there must be an "unequivocal expression of congressional intent to overturn the constitutionally guaranteed immunity of the several States." Atascadero, 473 U.S. 234 at 240, 105 S. Ct. at 3146 (quoting Pennhurst, 465 U.S. at 99, 104 S. Ct. at 907 (internal quotations omitted)).

Such unequivocal expression of intent to abrogate immunity is not present here. The text of 42 U.S.C. §1983 does not expressly override the states' Eleventh Amendment immunity. The Supreme Court has held that Congress did not abrogate states' sovereign immunity in passing section 1983. See Will v. Mich. Dep't. of State Police, 491 U.S. 58, 66, 109 S. Ct. 2304, 2310 (1989); Quern v. Jordan, 440 U.S. 332, 341, 99 S. Ct. 1139, 1145 (1979).

---

Amendment immunity in federal court.

11

The Bernofskys' only other federal law claim is an alleged violation of the Equal Protection Clause of the Fourteenth Amendment.[5] The Bernofskys seem to allege a violation of the Fourteenth Amendment distinct from their section 1983 claim, as they do not cite any statute or common law doctrine in support of their claim. See Record Document 1 at 8. Absent a statute that clearly and expressly abrogates the state's immunity, the court will not presume such intent. See Atascadero, 473 U.S. 234 at 240, 105 S. Ct. at 3146. The court finds no basis for concluding that Congress abrogated Louisiana's Eleventh Amendment immunity in this case.

Based on this analysis, the court finds that the State of Louisiana has not waived its Eleventh Amendment immunity and Congress has not abrogated the state's immunity with respect to the Bernofskys' claims. The court finds the LRA and the OCD, as arms of the state, are entitled to the protections of the Eleventh Amendment.[6]

---

[5] Defendants the LRA and the OCD argue that no such Fourteenth Amendment claim exists. The court need not address whether plaintiffs have stated a claim for relief at this juncture. Regardless, the defendants are immune from suit under the Eleventh Amendment.

[6] Defendants the LRA and the OCD also move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The court grants defendants' motion under Rule 12(b)(1) and does not reach their 12(b)(6) motion. If the court had reached the defendants' 12(b)(6) motion, the court would have granted it, because the plaintiffs fail to state a claim upon which relief can be

B.  Motion To Dismiss By ICF.[7]

1.  Federal Rule Of Civil Procedure 12(b)(6) Standard.

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief-including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007)). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974. "When considering a motion to dismiss, the court accepts as true the well-pled factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002) (citation omitted). The court generally must not consider any information outside the pleadings. See Sullivan v. Leor Energy, LLC, 600 F.3d 542, 546 (5th Cir. 2010).

It is well-established that pro se complainants like the Bernofskys are held to less stringent standards than formal pleadings drafted by lawyers. See Taylor, 296

---

granted.
    [7]The court grants ICF's motion under Rule 12(b)(6) and does not reach the 12(b)(7) motion.

F.3d at 378 (citation omitted). However, regardless of whether the plaintiffs are preceding pro se or are represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. See id. (citation and quotations omitted). "[E]ven when a plaintiff is proceeding pro se, the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." Govea v. ATF, 207 F. App'x 369, 372 (5th Cir. 2006) (quoting Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995)). This court need not "conjure up unpled allegations or construe elaborately arcane scripts to save a complaint." Id. (quotations and citation omitted).

### 2. 42 U.S.C. § 1983 Claim.

The Bernofskys allege a violation of their rights under 42 U.S.C. § 1983. Section 1983 "provides a federal remedy against a defendant who under color of state law deprives a plaintiff of any federal constitutional or statutory right." Hull v. City of Duncanville, 678 F.2d 582, 583 (5th Cir. 1982); Cornish v. Correctional Servs. Corp., 402 F.3d 545, 549 (5th Cir. 2005) (internal quotations omitted). Assuming arguendo that ICF acted "under color of state law," the court must

determine whether plaintiffs allege a violation of a federal constitutional or statutory right.

The Bernofskys claim that ICF's "disparate treatment of plaintiffs constituted a violation of plaintiffs' civil rights." Record Document 1 at 8. The Bernofskys fail to identify the federal statutory or constitutional right of which ICF allegedly deprived them. They also provide no explanation of what actions or inactions by ICF comprised the alleged "disparate treatment."

Accepting the Bernofskys' factual allegations as true, the Bernofskys have at most a tort claim against ICF. The Bernofskys have not alleged any facts supporting a theory of arbitrary or discriminatory action by ICF. The only possible basis for the Bernofskys section 1983 claim is ICF's alleged failure to properly process their registration application or otherwise transfer it into the Road Home system, to contact them upon the initiation of the program as promised in the registry's online confirmation page, to respond to letters sent by the Bernofskys in August 2008, and to provide them with an opportunity to file their application past the deadline of July 31, 2007.

However, "no Section 1983 action arises merely because tortious injury results from action or inaction" by a state agent. Hull, 678 F.2d at 584. The conduct must be "sufficiently egregious as to be constitutionally tortious," or in

other words, "the sort of abuse of government power that is necessary to raise an ordinary tort by a government agent to the stature of a violation of the Constitution." Id. Such abuse of power is not alleged here. The Bernofskys allege only mismanagement and incompetence, which does not rise to the level of a constitutional violation. As the Bernofskys' allegations do not implicate a federal right, they have failed to state a claim under section 1983.

### 3. Fourteenth Amendment Equal Protection Claim.

The Bernofskys appear to allege a violation of the Equal Protection Clause of the Fourteenth Amendment independent from their section 1983 claim. See Record Document 1 at 8. They do not cite any statute or common law doctrine in support of their claim. See id. To the extent the Bernofskys are alleging a stand-alone violation of the Fourteenth Amendment, the Fifth Circuit has expressly rejected such a claim. See Hearth, Inc. v. Dep't of Pub. Welfare, 612 F.2d 981 (5th Cir. 1980) (holding that where plaintiffs had an alternative remedy, the court would not substitute its judgment for that of Congress by creating an implied right of action). Here, the Bernofskys have an alternative remedy, as they may sue ICF in state court. This court sees no reason to depart from established jurisprudence by implying a federal right of action in this case. Without a right of action, the Bernofskys' claim fails for a lack of jurisdictional basis.

The Bernofskys also fail to allege an equal protection claim. To properly plead a "class of one" equal protection claim, a plaintiff must demonstrate that "(1) he or she was treated differently from others similarly situated and (2) there was no rational basis for the disparate treatment." Stotter v. Univ. of Tex., 508 F.3d 812, 824 (5th Cir. 2007); Vill. of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct. 1074 (2000). The Bernofskys have not alleged any facts suggesting they were treated differently from others similarly situated. Nor have they argued that ICF did not have a rational basis for its actions or inactions. The court finds the Bernofskys have failed to allege an equal protection claim.

### 4. State Law Claims.

The Bernofskys allege various state law claims in addition to their federal law claims, including negligence and a violation of Article 1, Section 3 of the Louisiana Constitution. All of the Bernofskys' federal law claims have been dismissed. The court declines to exercise its supplemental jurisdiction over the remaining state law claims and will accordingly dismiss these claims without prejudice.[8] See 28 U.S.C. § 1367(c)(3); Certain Underwriters at Lloyd's, London

---

[8]Under 28 U.S.C. § 1367(d), the Bernofskys will have at least thirty days from the date of dismissal to file any state claims which fell under the supplemental jurisdiction of this court and which were not prescribed prior to their submission to this court in an appropriate state tribunal before state periods of limitation resume.

v. Warrantech Corp., 461 F.3d 568, 578 (5th Cir. 2006) (explaining "it is our 'general rule' that courts should decline supplemental jurisdiction when all federal claims are dismissed or otherwise eliminated from a case").

### III. CONCLUSION

Based on the foregoing, the defendants' motions to dismiss (Record Documents 19 and 20) are **GRANTED**. All of the Bernofskys claims against the LRA and the OCD are dismissed without prejudice. All of the federal claims asserted against ICF are dismissed with prejudice. The court will exercise its discretion under 28 U.S.C. § 1367(c), in accordance with the general rule of this circuit, and decline to exercise supplemental jurisdiction over the Bernofskys' state law claims and will dismiss these claims without prejudice.

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 30th day of September, 2010.



JUDGE TOM STAGG